The Woodbridge Public Court Third Division is now in session. Honorable Justice Jesse G. Redding is the presiding. Good morning, everyone. Please have a seat. Thank you, Mr. Trading. Thank you, Mr. Trading v. Ricardo Forrer. Alright, when counsel is going to argue this matter, please approach the podium and identify yourselves for the record. Remember that the microphone does not amplify, it only records. So speak into the microphone, please. Can I wait for my turn? Good morning, Your Honor. My name is Andy Schwartz. I represent the Appellant, in this case, Louis S. Panos. Thank you. Good morning, Your Honor. My name is Charles Risch, and I represent the Appellees, the Forrer Group. Could you spell your last name, please? R-I-S-C-H. Thank you. Okay, and so 15 minutes apiece. Appellant, you want some time for rebuttal? Yes, please. How much? Five. Five minutes, alright. Okay, let's proceed. Thank you, Your Honor. Thank you, Your Honors. May it please the Court, Andrew R. Schwartz of Schwartz & Kaniak. I'm here on behalf of the Appellant, Louis Panos. This appeal involves three issues, one of which is quite interesting to me as a collection attorney, which is what effect does the dormancy of an underlying judgment have upon an AYUFDA petition brought within supplementary proceedings? The second issue will turn on, I think, the scope of the Court's prior Rule 23 remand, and the final issue relates to the tender of payment and what effect that has on post-judgment interest. But I want to start off with the dormancy issue. And in this case, I think it would be beneficial to think about the supplementary proceedings and what happened here as a tower built from logical blocks. I'm sorry, from what? Logical blocks. Oh, okay. And you start with the foundational block, so that's the base floor. And the foundational block, we start with the premise that supplementary proceedings are just a fancy term we use here in Illinois for how we enforce a civil judgment. And so the foundation for a logical supplementary proceedings tower is an enforceable judgment. Without it, you can't have supplementary proceedings. The second floor of the logical tower is the supplementary proceedings themselves. These are a, it is an action in the aid of a judgment, but it is a separate proceeding. So you start off by getting the clerk to issue a citation, and then you get the citation served, and you establish supplementary jurisdiction. So that's the second floor. The third floor of our logical tower here is the enforcement actions that a creditor may take within the supplementary proceedings. And there's a lot of them. The creditor can discover financial information about the debtor, both in writing and by examinations. The creditor can impose liens by serving the citations and protect the liens through contempt motions. They can engage in garnishments and wage deductions. And you can do executions by turnover orders. And finally, what's pertinent to this case is you can do an avoidance action under the Illinois Uniform Fraudulent Transfer Act. But what happens to our logical tower if you take away its foundational building block? And that's if you make the judgment unenforceable. You've taken out the foundation, and the whole tower comes crashing down. That's what happened here. All of the enforcement proceedings in that case cease to exist other than a select few, which are accepted from the dormancy. And the closest case we found on point was the Shipley case that we've cited. This was a contempt motion for violating a citation lien. And this is, the contempt motion is one of what I've described as our third floor activities, which is an action to enforce the citation. But in Shipley, you had the underlying citation that expired. That's the second floor of our logical tower. And in Shipley, your colleagues in the Fourth District let the parties who were responding to the contempt action assert the termination of the citation as a defense to shield them from the creditor's attempts to enforce the citation lien. But the idea being that if you eliminate the environment or the supplementary proceeding in which the contempt action existed, the contempt action could not exist in a vacuum. Now, this case presents an even more basic attack on our logical tower because the dormancy of the judgment eliminated the very first floor block. It eliminated the foundation. The foundation is, as I said, an enforceable judgment. And the creditor's failure to revive that judgment within seven years, which is undisputed here, eliminated the very foundation for this entire logical tower. And this is important in this case because here the appellees chose to file their IUFTA petition within the supplementary proceedings, which are based on the judgment against Ponos Trading LLC, which I'll refer to that as the LLC. As I said before, most supplementary proceedings cannot exist without an enforceable judgment. You've got Section 12-108A. There are some exceptions to 12-108A, and I would be remiss if I didn't talk about those, but they don't apply here. And the exceptions are, first of all, if you've got a judgment for child support or a judgment for a Crime Victims Act award, those judgments never go government. If there is a levy upon real estate, the levy gets an extra year where the creditor can enforce it. And then if you look at Sections 12-108C of the Code of Civil Procedure and 12-1602H, that creates another exception for pending wage deductions. Those can continue. None of those apply here. An IUFTA petition brought within a supplementary proceedings is not one of the collection actions that can continue post-dormancy. So upon the dormancy, the IUFTA petition goes away and should be dismissed. The cases that I've cited talking about the appellees having to revive their judgment within seven years, this court had a decision in a case called Golden. I think that was from 2016. And then the second district had an earlier case, which I'm going to botch the name, Waffle Mocker, I think. But one of the other principles that we talked about in our brief that's important is the expressio unius est rule of statutory construction. This is why I wanted to talk about the types of enforcement actions that do not go away. Because what you have here is you have the legislature in 12-108A, 12-108C, and 2-1602H listing certain enforcement proceedings that may continue after dormancy. And the rule is that if you've got a statute that includes, that lists certain things that may continue, it implicitly excludes everything else. That's how expressio unius est works. The lower court then compounded that error by reviving the judgment against the LLC without following the procedure for revival. The day after we filed our motion to dismiss on the basis of the lack of an enforceable judgment on the dormancy issue, the record on appeal shows that the appellees filed a revival petition but did not serve it correctly. They tried to serve it on the judgment debtor's lawyer, the former lawyer, like a motion, rather than complying with Rule 106, which is the way that the revival statute requires. We brought that issue to the lower court's attention, and you'll see if you look at the, there was an order in October that we had cited in our briefs, you'll see that the lower court gave the appellees leave to serve the Secretary of State. Carl, I just want to remind you that you do have time for rebuttal, and you might want to wrap this up at this point in time. Fair enough. In that case, Your Honors, unless there are any questions, I will yield the floor and wait for rebuttal. Okay. I have a few questions. So the Uniform Fraudulent Transfer Act count was filed during the supplementary proceedings before the seven-year dormancy? Yes. Correct? Yes. And those were ongoing proceedings? They were ongoing proceedings. The way it worked, I believe, is I think the Boofta case was filed, if I remember correctly, somewhere around 2013 or 14, proceeded until there was a judgment before a trial judge was then Judge White. Then there was an appeal of that issue, and that resulted in the first Rule 23 order that this court issued. And then the case was remanded back down to the trial court for further proceedings to determine which transfers to avoid. So is it your position, because you filed a motion to dismiss prior to their request to revive the judgment, that they were out of the box? Yes. There was no revival at that point because the dismissal action has to be ruled on first? I believe that's correct because, as I pointed out in our briefs and as I pointed out before the lower court, we don't contest that they have a right to revive, but the revival is a prospective, it works prospectively. They can revive and then they can issue new supplementary proceedings and build the tower that I was talking about before. You know, you spend a long time in post-judgment, so I understand what you're saying. So there's no beef with the actual revival. Your problem with the revival is that there was a motion to dismiss that was filed prior to the motion to revive. Not exactly. There is also a beef with the revival because even though they filed the revival petition properly and then there's some issue as to whether they actually filed the amended petition that was granted, but they never served it. And if they served the amended petition, even if they had and it somehow didn't make it into the record, they couldn't have served it more than 30 days before it was granted, and there's a problem with that that was never addressed by counsel. Do you have any other questions or does anybody else? Yes. So, Mr. Powell's prejudice by the revival of the dormant judgment? To the extent that I believe yes, and the reason I say that is because in order for this IUFTA petition to exist, there had to be a revived former judgment because it was brought within the supplementary proceedings. It's kind of like if there was a motion for summary judgment filed in a case. You know, a plaintiff files a motion for summary judgment, says I'm entitled to win the case, and the defendant successfully moves to dismiss and the entire case is dismissed? You cannot have your motion for summary judgment exist in a vacuum, and that's what they have here. They've got an IUFTA petition that was originally filed as part of a supplementary proceeding. If the supplementary proceeding ceases to exist, so does the IUFTA petition brought within it. Didn't that judgment go dormant in the first place because Mr. Ponos consistently used efforts to avoid paying the judgment to debt? No, I wouldn't say that. I wouldn't say that. I don't have evidence in the record that he maneuvered so he wouldn't have to pay the debt. I think the record in the trial court is replete with evidence that he was avoiding paying the debt, and that's why the judgment went dormant. No, I think the judgment went dormant because the judgment creditor did not check their calendar and moved to file a petition to revive it. I mean, blaming the judgment debtor for the judgment creditor's failure to pay attention to the calendar is not fair to the judgment debtor. If you're going into the pot and there's nothing in the pot because the other person didn't put in what they were supposed to, what are you supposed to do? Then you would file an action to try and set aside the fraudulent transfer, which they did timely. The problem is they didn't watch the clock. Okay, and what about the notice? You indicate that, did Mr. Ponos receive a notice to revive? Mr. Ponos received the notice to revive. He got a notice of motion. I think it was served on me by email. Right. So if Ponos Trading was defunct for a decade, why should we be moved by your argument regarding improper service of the petition to revive? Because Ponos Trading and Blue Ponos are different legal entities. Okay. And if they are different legal entities, I mean, this kind of goes to their issue about standing or no standing. On the one hand, they're claiming that we have no standing, but on the other hand they're saying that service was good enough because we're the same person. Right. That's an inconsistency. The point here is that the statute would require service on the Secretary of State and then would require 30 days' notice. I think where you're going, Justice Reyes, is that we somehow waived the right to insist on this because they didn't serve somebody else properly, another legal entity properly, and didn't give that legal entity time to respond. I don't think that's how it works. Isn't Louis Ponos actually Ponos Trading? No. Louis Ponos is an individual. Ponos Trading no longer exists. It is a dissolved, limited liability company. He was one of the members. He was, I think, a managing member. Wasn't he? I think he was the managing member. Yeah. Do you represent Ponos Trading? I never represented Ponos Trading. I've never represented them. Okay. Okay. All right. Any questions? I have a few more questions, yeah, to follow up on what Justice O'Neill Burke asked you. Now, if I'm understanding this correctly, the motions were heard at the same time, on the same date. Is that right, the motion to revive and the motion to dismiss? The motions, I think the order that resolved both of them was dated December 20th of 21, I think. Okay. And so isn't it true that the courts have the inherent power to manage their own dockets to achieve an orderly and expeditious disposition of cases under the Nicholson v. CBA case? I think that's fair. And doesn't that power also include the power to decide the order in which motions are decided? Like, you know, I served for 14 years on the domestic relations calendar, and I would decide myself what order I was going to hear them. It wasn't always what was filed first. It depended on what was logical for resolution of the case. I accept that a trial court has the power to order the hearings the way it wants. I happen to think that in this case, given the issues that we've raised, the trial court, Judge Hennigan, should have dealt with the issue that we raised first, but he chose to do otherwise. I think it would have made more logical sense to deal with our issue, because I think our issue was really a head shot to the IFTA petition. But wouldn't you have to prove that it was an abuse of discretion by Judge Hennigan to hear them in a reverse order? I'll accept that. When exactly in the appellate court's earlier decision did a direct district court revisit the issue of unsoliced e-calculation? Well, I think that is encompassed in the language that the court used where it's amended for further proceedings to determine which transfers to avoid, because I think the necessary predicate to that. What kind of decision is that? That's at the tail end of the remand language. I can get it out. But he doesn't say anything about determine Panoff's liquidity. It says determine what order the citations are going in. It does not specifically say. I think the point here is that the way that I read the Rule 23 order is that it is saying figure out which transfers can be avoided and should be avoided. But it says nothing about determining Panoff's liquidity before you make those decisions. You mean the LLC? Because Panoff's was the third party. The LLC was the debtor. Right. Okay. It does not specifically say that. Okay. All right. And then with regards to the tender, do you think Mr. Panoff's alleged the tender to be full and unconditional so as to stop the accrual of interest? I think the tender was sufficient to stop the accrual of interest. I mean, part of the problem that I've identified is that the underlying trial court order, the one that Judge White entered to begin with, was not clear as to who owed what. So, again, he did the reasonable thing. He asked the creditor, how much do I owe? The creditor provided a figure. He offered slightly more than that figure, and they rejected it. But what made it unconditional? Saying, here's the money. We're done. Let us out. I mean, I'm not sure I understand your question. I mean, here's the money that you say we owe. Here's a little extra. Let's be finished with this. Okay. You still have five minutes for a bottle of salt. Thank you. Okay. Thank you very much. Yes. Good morning. Good morning. Hi. I'm going to start today addressing appellant's contention that the instant that the judgment against Panis became dormant, that Appellee's UFDA case ceased to exist. Not so much today as it was implied, but this argument in his initial brief was based largely on the contention that the dormancy of a judgment deprives the court of subject matter jurisdiction to address any enforcement action. Interestingly, appellant cited Belleville Toyota versus Toyota Motor Company in support of an additional contention that because the dormancy issue implicates the court's subject matter jurisdiction, it is a non-labelable argument. While Belleville clearly supports the proposition that objections to subject matter jurisdiction are non-labelable, it also completely refutes plaintiff's contention that any of the statutory provisions he's talking about raise any issue of subject matter jurisdiction. Belleville and his prodigy lay out quite clearly that the only basis for subject matter jurisdiction in non-administrative law cases in the state of Illinois derives from the Illinois Constitution and that no statutory directive or provision can eliminate or affect the trial court's subject matter jurisdiction. A second pillar of which was discussed a little bit in Mr. Schweitz's argument, the second pillar of his argument is that this UFDA case is an enforcement action. I'm sorry, what was that? Is an enforcement action or in a supplementary proceeding or a citation. He's called it a citation several times. You know, this argument is not supported by any authority, supporting the conclusion that UFDA case is ordinarily an enforcement action. To the contrary, Mr. Panos in his brief conceded that if this case had been filed as a stand-alone action, the viability of Panos' current judgment would be irrelevant to this case because under the Illinois law, UFDA cases are not cases enforcing a judgment against the underlying debtor. He also didn't support this argument by any analysis of the substance of our UFDA pleadings or of any of the relief that he's talked about, you know, were any liens issued, attachments, did we do any of this kind of collection stuff, did the court or the parties treat this as an enforcement action. He says that any such analysis would miss the point. His sole basis for making the argument that this is an enforcement action is that it was filed in an existing case in which we obtained the Panos' current judgment. He then makes a lot of assertions about general statutes that apply to citations or apply to enforcement actions and applies them to this case, assuming by assertion that this case was transformed into a citation or an enforcement action because it was filed in the existing case rather than it was a separate case. These arguments by assertion are insufficient. UFDA cases aren't enforcement actions. This case isn't an enforcement action. No citation was issued by the clerk that started it. UFDA had objections to where this case was filed. He clearly did. He filed a motion to dismiss based on where the case was filed. It's the first pleading on remand. Also saying that was managed subject matter jurisdiction. There was a time and a place to bring it. And that time and that place was in the trial court before the first appeal, not here on the second appeal. Initially, he never raised this argument at any time until on remand. Our position is we filed it in that case. That didn't transform it into something it was not. The statement of the pleading clearly stated what it was. It referred only to UFDA. It set forth the factual allegations that would have been necessary to recover under the UFDA. It proceeded as a normal UFDA case. A motion to dismiss was filed. An answer was filed. A summary judgment was filed by appellant to nurse. At no time did he ever raise these issues. So our position is in this case, no issue of subject matter jurisdiction is involved, number one. And two, this was not an enforcement action. And the viability of the panelist rating judgment is just simply irrelevant to our UFDA claims. Because they're not in action to enforce that judgment. They don't depend on that judgment. The judgment only serves as evidence of the debt here. If you look at the Apollo case, that's how they treated a Ford judgment in that case. And they said, you know, this isn't a suit on that judgment. The judgment just is the allegations asserting the judgment just satisfy the plaintiff's obligation to show a creditor-debtor relationship and that there's the extent of the debt. That's what happened in this case. Moving on, appellant once again argues that the judgment against him should not have included interest on the underlying panelist. Debt, this argument was raised in the first appeal. The court decided it was waived because it was not supported. He shouldn't be allowed to re-argue it here. Also, it's wrong in the law. UFDA isn't limited, doesn't limit recoveries to the face amount of the original debt. There's a provision specifically allowing for any further relief that the circumstances or principle of equities require. One appears in an Illinois case has addressed whether this permits an award of interest. The cases in at least two other jurisdictions show that under those states' versions of UFDA, such awards are entered either often or frequently. Given the policy of uniform acts, these cases are ordinarily given great deference in Illinois, but more deference than in our jurisdiction case usually would be given the policies by uniform acts. Insolvency. Similarly, Mr. Pannis's renewed arguments about insolvency in this moment-by-moment analysis. This is the same argument he raised in the first appeal. He referred to focus reports there instead of haircut summaries here. But otherwise, it was the exact same argument. This Court was in that argument, decided no, the standard isn't insolvency at the time of each transfer and we've got to prove actual insolvency. The standard in Illinois is did the transfers tend to or directly impair the rights of the creditors? They found that they did in this case. They found that the judge improperly found that they did and that that holding settled the issue of insolvency for the purposes of UFDA and also entitled the Foyer Group to reverse as many of the identified transfers within the claim period, which was the end of 2008, to attack that debt other than the one which sent us back down in remand, the $350,000 transfer. With respect to the revival, again, our position of dormancy doesn't have anything to do with the UFDA case. It does have to do, again, with the revival. First, the panel argues that his motion to dismiss should have been heard first. I think that's been thoroughly vetted. The judge had the discretion to do what he did. I think it would have been an abusive discretion in this case, given the theory that it eliminates a decade worth of litigation that is of now no account. It has to start over all because of this. That would be a pretty drastic remedy in the play, the face of the Illinois policy, that cases should be resolved in their substance and their merits, not technical procedural technicality. The panel also argues that the revival in this case was ineffective because there's no proof of filing or service. That's not correct. You know, the order says, I'm here citing this motion. I'm fully advised in the premises. This motion has been served on, or the parties that appeared in this motion having been served on the Secretary's panel, certainly having been served by the Secretary of State or on the Secretary of State. That's what it was. In fact, in the Supreme Court, in People v. Carter, held there's a presumption that courts know and follow the law. And in that case, it's specifically held that lack of proof of service in the record, absent all the proof, is insufficient to establish there was no service, insufficient to rebut that presumption. Carter also held that a lack of proof of service, excuse me, the last thing I want to say about that right now is the argument is also precluded because the appellant never raised this in the trial court. He never gave the trial court the opportunity or the parties given the opportunity to correct this error. He's raising it for the first time in appeal. Last, appellant complains that penetrating received insufficient notice. That argument also fails. First, appellant failed to raise the issue in the trial court again. Second, under Illinois law, party may only raise the issue of lack or insufficiency of service on behalf of him or herself. Accordingly, appellant likes standing to raise issue. That's People v. Coon. As the Supreme Court observed in Carter, the object of service of process is to notify a party of pending litigation. In considering the sufficiency of such process, the court looks to whether the object and intent of the law were substantially attained rather than the formal and technical requirements. That's a quote from paragraph 12 of Carter. In this case, the appellant was a school class A member of panelist rating and now dissolved LLC. He's the only person that could have caused that LLC to act or appear in this case. Panelist is attorney participating in the hearing. On the facts of this case, we believe the objects and intent of the rules regarding notice were satisfied and there was sufficient analysis. Counsel, I'm going to ask you to start wrapping up, okay? I'm going to now just address real quickly a couple of points that you raised. One is his tender. The tender wasn't complete. He talks about the record about, oh, well, we asked them for a number and they gave it to him. Yeah, they gave him two numbers. We had one number of what he would owe without the $355,000 transfer that the court would have sent back down to address and one with the $350,000 transfer being considered. That's the one he picked, of course, because it resulted in about $200,000 loss of liability to him. And he tendered that amount. And then said, well, now I want a full and unconditional release. We said no. That's not the kind of offer that qualifies to cut off interest. The last point just basically I want to say is, you know, I just want to complain that we filed it in the wrong place. Which I wrote. We filed it in the wrong place. We shouldn't have filed it in the existing case. We should have started a new case. You know, again, this is a mistake, if it was a mistake, that should have been corrected at the trial court, should have been brought up either in his motion or his first answer or his summary judgment at some point when it could have been cured. Not now, 12 years into the litigation. Thank you very much for your attention. Thank you. Questions? No questions. Thank you. So I have a question with regards to the judgment. Did the judgment go dormant because of Mr. Panos' efforts to try to avoid paying the debt? Say yes or no. Certainly I would say yes. Okay. And why? Well, because, first of all, it lends its points. And when he tries to say he didn't waive the dormancy by any means. I'm just going to speak into the microphone, counsel. Excuse me. I'm sorry. I get it. He said that, well, excuse me just a second, I lost my thought. It was about the judgment going dormant. Oh, right. Oh, he said he couldn't waive his dormancy arguments despite the fact that he continued to litigate aggressively. So the motions, all this stuff we were arguing on, what I thought was a fairly simple remand. Figured out this one transaction was a loan amount, then told it off, given their judgment. That's not what happened, obviously. And that dragged the case on continually and continually and continually. And during that process, the judgment against Panos trading, which, let's face it, it's worth nothing to us. It's a dissolved LLC. It's got no assets. We're not going to go around trying to enforce that judgment. What we're trying to enforce is our judgment against Panos in this case, not our judgment against Panos trading in some other case. So, yes, I agree because of that. And then I just want to ask a question with regards to something I believe you said. If you think that UFTA creates an obligation which is independent of the underlying debt, why would you bother to revile the underlying judgment? Well, first of all, Judge, I knew I was going to end up here. We litigated everything in this case. And so I wasn't going to take any chances. And also, I had to react quickly. So I filed the motion to revile. Why not be protective? And then I started researching and realized this was unnecessary, but what the heck. It doesn't hurt to revile. Okay. All right. Any questions? Nothing. Okay. Thanks. Thank you very much for your attention. Good morning again. Let me go through the list of things that I was able to do. You have five minutes. Yes. Okay. Mr. Risch started off by talking about subject matter jurisdiction waiver and the fact that we never raised the issue of whether it was proper to bring the UFTA case within a supplementary proceeding. Well, we sure did. We filed a – one of the first things I did when I got involved in the case, this was back in 2018 when Judge White was still on the bench, we filed a motion to dismiss that they have identified as an issue. They talk about it on pages four, five, and six of their brief. And that was the issue that they raised. And oddly enough, they made an – had included an argument in their response to our amended motion to vacate the judgment that the UFTA petition could properly be addressed as a Section 214.02 proceeding. That's at page C2675 of the record. The argument that this is not really an enforcement proceeding is – it just belies the facts. I mean, the question is, where was this filed? They chose to file it within a supplementary proceeding. A supplementary proceeding is an enforcement proceeding. They brought it before the enforcement judge. The record on appeal, they're making claims that they gave proper notice that they actually filed the amended petition. You can't just argue – you can't just say stuff in the appellate court. You have to be able to show where it is in the record. And you can't argue facts outside the record. Jurisdiction, if it's a question of jurisdiction, I believe that can be raised in the appellate court. With respect to service, they're talking about – well, we've got service. Service upon who? Upon whom, I guess. I was an English lit major, so that's an important thing. Who is the party to be notified here of the revival petition? It was not Lou Panos. It was Panos Trading LLC. Lou Panos had no relationship with Panos Trading LLC at that point because it was dissolved. The issue of tender. A party only needs to tender what that party owes, not what the party might owe if somebody else doesn't owe a particular portion. And the issue of dormancy. Justice Reyes, you asked both me and Mr. Risch about this issue. Is it Mr. Panos' fault that the judgment went dormant? The judgment creditor's duty is to keep track of the dormancy clock. That's one of the first things. I've been practicing collection law for a long time. That's one of the first things we do is we say, When was the judgment entered? And you put down in your calendar, this is when we have to have the judgment revived. And then you put a bunch of reminders six months ahead of time so you don't blow the date. This is a judgment creditor's lawyer's responsibility to protect against that very possibility. I would also just note that even if you did not analyze the case the way that we analyzed it, which is that if the underlying supplementary proceeding went away because of the lack of the judgment, you would still reach the same result. If you take a look at paragraph 11 of this court's prior Rule 23 order, it correctly looked at Section 2C of UFTA and identified a claim as a right to payment. This court then cited an Arizona Supreme Court case called Hullett for the following proposition. It says, In this context, a quote-unquote right to payment is nothing more or less than an enforceable obligation. And if you use the term enforceable obligation, if you focus on that and you don't have an obligation that can be enforced, a judgment that cannot be enforced because it is now dormant, you don't have a claim and you are therefore not a creditor under the definition of creditor under the Uniform Fraudulent Transfer Act. So the whole point here is even if you don't accept the proposition that the loss of the or the defunctness of the supplementary proceedings kills the UFTA claim, the lack of an enforceable obligation does it on the back end. Does anyone have any questions? Because that was the end of what I had to remarks that I had to say. No questions. Thank you. No further questions. Thank you very much. Nice to see everybody. All right. Thank you very much, gentlemen, for the well-argued manner. The court will take it under advisement and we will take a short recess.